

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXXXGXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. James E. Kilday
Director, Motor Trans-
portation Division
Railroad Commission of
Texas
Austin, Texas

Opinion No. O-1310
Re: Whether Railroad Commission may
issue certificate of convenience and
necessity to operate as a common car-
rier motor carrier to a subsidiary of
Missouri Pacific Railroad to operate
parallel with and supplementary to the
railroad, serving no new points or
lines, without alleging and showing
inadequacy of existing facilities and
need of additional transportation
facilities.

Dear Sir:

  We received your letter of August 22, 1939, wherein
you outline to us the following facts:

  Missouri Pacific Freight Transport Company is a Texas
Corporation, the capital stock of which is wholly owned by the
Trustee in Bankruptcy for the Missouri Pacific Lines. It has
been recognized by the Railroad Commission of Texas as an ex-
press company and has on file with the Commission tariffs re-
specting its service. The Missouri Pacific Lines operate a
line of railroad serving, among others, the towns of Taylor,
Thrall, Thorndale, Rockdale, Milano, Gause, Hearne, Franklin,
New Baden, Easterly, Marquez, Jewett, Buffalo, Oakwood, Pales-
tine, Neches, Jacksonville, Henderson, Overton, Troup, Arp,
Tyler, Lindale, Mineola, Kilgore and Longview. These towns
are situated on United States Highways 79 and 69 and State
Highways 43, 37, 110, 64, 135 and 26. Missouri Pacific Freight
Transport Company, as a rail transport company, already extends
service to each of these towns to, from, and between points on
the rail lines of the Missouri Pacific Lines, and principally
Houston, Dallas, Fort Worth, San Antonio, Austin, Longview,
Memphis, Tennessee and St. Louis, Missouri. As a rail trans-
port company, Missouri Pacific Freight Transport Company al-
ready competes with the highway truck lines serving the named
points to, from, and between the various points on the Missouri
Pacific Lines, including the towns last named.

  Missouri Pacific Freight Transport Company has filed
an application with the Railroad Commission of Texas for a
certificate of convenience and necessity, authorizing it to
serve the towns first listed by using the highways mentioned.
As stated before, it already serves those towns as a rail trans-
port company.

It is stated in the application that the extent and design thereof is to improve the service of the applicant to, from and between the towns it serves by using highway trucks in coordination with and auxiliary to the rail service of it and its parent. No new service will otherwise be inaugurated. No towns except towns already served by it as a rail transport company will be served. No towns off the line of the railroad will be served. The further purpose of the application is stated to be the rendition of highway and joint rail and highway service in addition to the service by rail exclusively which the transport company now renders and proposes to continue. The application is to operate trucks over the highways only from Taylor to Longview via Milano Junction and Palestine; from Troup to Mineola via Tyler and from Henderson to Troup.

You further advise that the application contains allegations that the certificate is sought for the purpose of making possible a larger and more flexible service from points on the routes over which the actual truck operation will be conducted to all other points and routes served by the Missouri Pacific Rail System and its rail connections and to expedite the handling of L.C.L. shipments between all points located on the Missouri Pacific Rail System and the points located on the routes over which the actual truck operations will be performed; that the principal shipping centers such as Dallas, Fort Worth, Waco, Austin, San Antonio, Corpus Christi, Houston, Beaumont and Galveston will originate the principal tonnage which will be expedited so far as movement by the applicant is concerned. That the plan of operation is to move that tonnage by rail to a junction point on the route over which the trucks will actually operate, thereby relieving the highways of their burdens and affording a facility for transportation which will have for its general purpose the transportation of freight the longest by rail and the shortest distance by truck necessary to render adequate and speedy service between all points in Texas on the one hand and points on the route above described on which trucks will actually be operated on the other hand. The application further states that from some of the principal distributing points to the points located on the route over which the truck operation proposed will be conducted the common carrier truck lines operate direct over night next day delivery service but that in some instances the services are effected by inter-change between two or more common carrier truck lines and that such lines do not have adequate terminal and freight depot facilities for receiving and discharging freight; and further that the movement of freight from points between Taylor and Milano on the one hand and points between Hearne and Tyler and Hearne and Longview on the other hand by the present common carrier truck lines is a

circuitous, indirect, irregular and independable service now being performed by the common carrier motor carrier truck lines and that the proposed service will operate a direct one-line haul between all of such points.

The application contains allegations to the effect that transportation of property for hire by existing common carrier truck lines from points between Houston and Brownsville; from points between San Antonio and Laredo; from points between San Antonio and Del Rio, involves two or three interchanges and that the service is slow, indirect, irregular and not dependable; that the proposed operation will set up a service wherein the shipments will move upon the billing of the Missouri Pacific Freight Transport Company by rail to some junction point on the truck route between Taylor and Longview and will then be transported by truck to consignee at final destination on said truck route without divided responsibility.

Said application contains allegations to the effect that the only way the existing common carrier truck lines can render the service from such great shipping centers as Dallas, Fort Worth, Austin, Waco, San Antonio, Corpus Christi, Houston, Beaumont and Galveston and from points between Houston and Brownsville; San Antonio and Laredo; San Antonio and Corpus; San Antonio and Del Rio is by operating trucks over great distances and interchanging such freight, which said operation of trucks is an unnecessary use of the highways resulting in interference with the use of such highways by the public generally and that for that reason the said existing common carrier truck service is inadequate and that there exists a public need and requirement by the public for a transportation facility and service which will afford to the shippers and receivers of freight a service by rail over the greater distances with expedited delivery by truck from the rail cars at some point along the route over which trucks are proposed to be operated; that the proposed operation will provide for the public such a system of transportation as will permit them to procure adequate, expeditious service with a minimum amount of use of their highways and will afford the great shipping centers of this state an opportunity and a plan of common carriage service which will be conducted by a carrier without any divided responsibility with any other carrier and will satisfy the public convenience in the use of the highways in that it will allow expeditious service to be rendered in the movement of L.C.L. shipments to all of the points located on the route between Taylor and Longview from any point in the State of Texas at such times and in such manner as to meet the demand of the public for rapid and expeditious movement of such L.C.L. shipments from any and all points in Texas to all of the points on said route without the use of any of the highly

traveled or highly congested highways of this state.  That
the existing common carrier truck lines in rendering the serv-
ice between all points in the State of Texas, on the one hand,
and the points located on the route over which applicant pro-
poses to operate trucks are now operating many trucks over
highly traveled highways in this state and have no facilities
whereby they can move such shipments between the points in-
volved without operating their large line haul trucks over
such principal highways in such manner as to unreasonably
interfere with theuse of the highways by the public and in
that respect such facilities and services of the existing common
carrier truck lines are wholly inadequate to meet the require-
ments and the public convenience of the people of this state
in the use of their highways and in the transportation of their
property between such points.

The application contains allegations to show the
kind and character of facilities devoted to the public service
and use by all of the Missouri Pacific rail lines on the one
hand and the facilities of the I. & G. N. line, a part of the
Missouri Pacific rail system located on the route over which
the applicant proposes to actually operate trucks.  Further,
the application contains allegations to show that said facil-
ities are not being used to their capacity and that by the use
of such facilities the public convenience requiring that the
highly traveled and principal highways of this state be re-
lieved of the trucks for hire will be met and that the pro-
posed operation will be a convenience to the public in that by
the use of such facilities already devoted to the rendition
of a common carrier service will be used in such manner as to
afford for the public a much improved service whereby special
handling of L.C.L. shipments between points located on the
route involved in the application and between those points
and all other points in Texas on the Missouri Pacific rail
lines and those to be reached by their connections.

You submit to us a large number of questions and
advise that the application is on file in your office subject
to our inspection.  However, we have not inspected the appli -
cation, believing that our answers to your specific questions
and the discussions which we shall make in connection with
such questions will be sufficient to meet your needs.  Slight-
ly rearranged, your questions are substantially as follows:

1.  Is the allegation that the existing common car-
rier truck lines do not have facilities and cannot render a
service without operating trucks over the principal highways of
this State in the transportation of property from points in
this State to points along the route on which trucks are

proposed to be operated an allegation of inadequacy of exist-ing common carrier truck service?

2. Is the allegation to the effect that the proposed operation will relieve the highways of the transportation of property over said highways by trucks an allegation which re-lates to the question of public convenience and necessity?

3. Does the allegation mentioned in question No. 2 in any sense meet the requirements of Section 10 of Article 911b, Revised Civil Statutes, with respect to the form and suf-ficiency of the application?

4. If said application contains the foregoing alle-gations and none other with respect to public convenience and necessity and proof is submitted to support such allegations would the Railroad Commission be justified in making a finding that public convenience and necessity requires such operation?

5. Will proof that the proposed operation will afford adequate service to the public with the minimum use of the high-ways when the existing common carrier truck lines between many of the principal shipping points in Texas and the points lo-cated on the route are already rendering reasonably adequate service satisfy the requirement that the applicant prove that public convenience and necessity requires such operation?

6. Would a showing to the effect that the proposed truck operation will afford a facility for transportation of property which will result in said property moving the longest distance by rail and the shortest distance by truck to pro-vide adequate and economical service to the public; that the proposed operation will result in the use of freight depots and other facilities in small towns to such an extent as to make possible their continued maintenance and continued employ-ment of agents at such small places to serve the public; and, that the proposed operation will provide a transportation fa-cility which if used by the public will greatly relieve the most highly traveled highways of the State of a portion of the burden of traffic they are now carrying constitute proof that public convenience and necessity requires such operation?

7. You call our attention to the fact that in hear-ings upon applications filed by motor carriers engaged only in interstate commerce the Railroad Commission is without authority to require showings of public convenience and necessity and in-quire if there is any parallel between such cases as that and the one at hand.

8.  Should the Railroad Commission consider proof of the improvement of the applicants and the Missouri Pacific rail line service in the foregoing manner as proof that public necessity and convenience requires such operation?

9. Can the Commission consider as proof of convenience and necessity the fact that Missouri Pacific Freight Transport Company is already serving the towns involved, service being as a rail transport company moving many millions of pounds of freight to, from and between the towns involved?

By Article 911b, Revised Civil Statutes, motor carriers are placed under the regulation of the Railroad Commission of Texas.  In Section 3 thereof it is provided that "no motor carrier shall after this act goes into effect operate as a common carrier without first having obtained from the Commission under the provisions of this act a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation."

Section 10 of said Article prescribes the contents which an application for a certificate must necessarily contain. The first paragraph of subdivision 4 thereof reads as follows:

"It shall be accompanied by a plat or map showing the route or routes over which the applicant desires to operate, on which plat or map shall be delineated the line or lines of any existing transportation company or companies serving such territory, and shall point out the inadequacy of existing transportation facilities or service, and shall specify wherein additional facilities or service are required and would be secured by the granting of said application."

The first paragraph in Section 9 of said Article 911b reads as follows:

"The Commission shall ascertain and determine if a particular highway or highways designated in an application for a certificate of public convenience and necessity are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highways by the general public for highway purposes.  And if the Commission shall determine, after hearing, that the service rendered by existing transportation facilities or agencies is reasonably adequate, or that public convenience would not be promoted by granting of said application, and the operation of motor vehicles on the public highways therein

designated, or that such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highways by the general public for highway purposes, then in either or any of such events said application may be denied and said certificate refused, otherwise the application shall be granted and the certificate issued upon such terms and conditions as said Commission may impose and subject to such rules and regulations as it has or may thereafter prescribe."

From a reading of the Motor Carrier Act as a whole and in particular the parts which we have quoted above, it becomes clearly apparent that considerations of highway conditions and of public convenience and necessity form two distinct and separate issues to be determined upon an application for a certificate to operate as a common carrier motor carrier. In Section 9 we find that the Railroad Commission may deny a certificate if it be found that the public convenience and necessity would not be served, although the particular highway to be traversed should be entirely sufficient to bear the added traffic. On the other hand the Commission is authorized to deny such a certificate where the highway will not stand the added traffic although public convenience and necessity would be promoted by the granting of the certificate. By this we do not mean to say that highway conditions might not in some instances enter into the question of public convenience and necessity. We are not called upon to determine that question in this case. We do mean to say, however, that a new common carrier motor carrier service cannot be inaugurated upon allegations and proof showing nothing more than that such service would be beneficial to the highways and to the traveling public upon the highways, with no showing of inadequacy of prior existing facilities and the need of other facilities to serve the territory affected. The motor carrier act repeatedly requires the showing of public convenience and necessity as a requisite to the granting of a certificate to operate as such a carrier and in Section 10 thereof it is expressly provided that no application shall be considered by the Commission unless it be in writing and set forth among other things the inadequacy of existing common carrier services and shall specify wherein additional facilities are required and would be secured by the granting of the application. The case of Railroad Commission vs. Red Arrow Freight Lines, 96 S.W.(2d) 735, before the Austin Court of Civil Appeals is conclusive of this point. The facts involved in that case were briefly these: H. H. Lawler became the owner by purchase of two certificates of convenience and necessity, one to operate from Houston to San

Antonio and intermediate points and the other from San Antonio to the Rio Grande Valley via Edinburg and serving intermediate points. He filed an application before the Railroad Commission for a so-called re-routing to permit him to go directly from Houston to Edinburg without serving intermediate points on that route. His theory was that he could already haul freight from Houston to Edinburg and points beyond and vice versa going by San Antonio and that no new service was therefore involved. It appeared, however, that the new route was about 120 miles shorter than the one by way of San Antonio and that his service between Houston and Edinburg would be shortened by thirty hours. Over the protest of competing carriers the Railroad Commission limited the hearing and its findings to the adequacy of the highways over which the re-routing was sought. The trial court set aside the order of the Commission granting such re-routing and an appeal was taken. The Court of Civil Appeals affirmed the action of the trial court in an opinion written by Chief Justice McClendon and from which we quote as follows:

"The two certificates were granted at different times to different individuals. They were granted to serve separate and distinct transportation requirements: The one served the territory from Houston to San Antonio and intermediate points; the other, that from San Antonio to the Valley and intermediate points. In considering the question of convenience and necessity as to each certificate, only the needs, requirements, etc., of the two termini and intermediate points were involved. Neither certificate had any relation to the other. The fact that common ownership was finally united in Lawler in no way modified their effect. They were manifestly not designed originally, nor through common ownership thereafter, to provide a direct through service between Houston and Valley points. The order in suit manifestly conferred upon Lawler a right to render a service which was substantially different from that authorized in his two certificates, enabling him to compete directly with appellees in a manner in which he could not compete with them before, if in fact he could effectively compete with them at all before. It is elementary that advantage in service is one of the most important factors in competition, and that time is a prime element in transportation service. We are clear in the view that the application could not be granted as a mere rerouting under the two certificates, but that it required a showing and commission finding of convenience and necessity."

The applied for motor carrier operation would offer many elements of competition to carriers already serving the

territory in question which the railroad does not offer. Trucks can be operated upon schedules which it would be impossible as a practical matter for a railroad to duplicate and in particular with reference to small shipments. Motor carriers can render certain services which a railroad cannot, just as on the other hand the railroad enjoys certain advantages over motor trucks with reference to certain kinds of shipments. That the motor carrier service applied for would be a different one from the railroad service rendered by the Missouri Pacific is so obvious we think as to neeed no support in argument. The application in question is for a new service and it must comply with the statute is to showing inadequacy of present facilities and the need of the new service. We will now answer the above questions with such additional discussion under each of them as we deem expedient.

Our answer to your first question is a negative one. The question as to whether existing truck lines can render service without operating over certain principal highways of the State in the transportation of property from remote points in the State to points along the route on which trucks are proposed to be operated is not one which goes to the adequacy or inadequacy of existing services but simply bears upon the matter of congestion of such highways. Such existing lines might very well operate over such principal highways and be rendering a perfectly satisfactory service.

In the light that we think your second question is asked we also answer it in the negative. In this connection, however, we would again observe that we do not here express an opinion as to whether or not under some circumstances the fact that a proposed operation might relieve certain highways of an over-burdensome traffic would be considered in connection with other evidence relating to public convenience and necessity and as evidence on that issue.

For reasons given above, we also answer your third question in the negative.

Your fourth question is given a like answer.

We are forced also to the same answer to the fifth question above. Under the direct holding of the court in the Red Arrow case, supra, a certificate cannot be granted alone upon proof that the highways will stand the burden where existing carriers are rendering satisfactory service and no need for such added operation is shown. The same answer follows to the sixth question.

The reason that the Railroad Commission hears no evidence upon the issue of convenience and necessity upon applications for certificates filed by carriers engaged in interstate commerce only is that Congress has given to the Interstate Commerce Commission the exclusive power and authority to determine that issue as to such interstate carriers.  Such, however, is not true in the case submitted to us and no analogy is therefore presented.  Your seventh question, therefore, calls for a negative answer.

Your eighth question draws a similar answer.  It does not take into consideration the character of service being rendered by other carriers to the territory in question.  The fact that the Missouri Pacific railroad service can be improved is no proof that the services being rendered by the carriers serving such territory are not reasonably adequate to meet the public convenience and necessity.  The ninth question is also answered in the negative.  If the fact that Missouri Pacific Freight Transport Company is rendering a rail service to the towns involved bears at all upon the issue of convenience and necessity it is evidence that the public convenience and necessity is already being served rather than that it is not being sufficiently served.

The service applied for is a new one.  The fact is not altered by the fact that the parent company already serves the same towns with a rail service.  Proof that the traffic  on certain heavily burdened highways would be lessened will not substitute entirely for proof that the public convenience and necessity requires the additional facility.  Inadequacy of existing lines must be alleged and shown along with the need of additional service.  We believe that the above will be sufficient to meet your needs with respect to this application. If not you will greatly oblige us by advising us to that effect and requesting our further opinion.

Yours very truly

APPROVED SEP 9, 1939
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
APPROVED: OPINION COMMITTEE
BY:       BWB, CHAIRMAN

ATTORNEY GENERAL OF TEXAS
By /s/ Glenn R. Lewis
Glenn R. Lewis, Assistant

GRL:N:wb